# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Nicholas M. Noli,

      Plaintiff

v.

Calvin Johnson, et al.,

      Defendants

Case No.: 2:21-cv-00650-JAD-NJK

**Order Screening and Dismissing Complaint with Leave to Amend**

      Plaintiff Nicholas M. Noli brings this civil-rights action under 42 U.S.C. § 1983, claiming that his Eighth Amendment rights were violated when medical and prison staff delayed surgically repairing his umbilical hernia during his incarceration in the custody of the Nevada Department of Corrections (NDOC).  Because Noli applies to proceed *in forma pauperis*,[1] I screen his complaint under 28 U.S.C. § 1915A.  The matter of the filing fee will be temporarily deferred.  In screening Noli's complaint, I find that he has not pled a colorable claim for deliberate indifference to serious medical needs against any defendant in Claim 1, which is Noli's only claim, so I dismiss his complaint without prejudice and give him until November 25, 2021, to file an amended complaint if he can cure the deficiencies outlined in this order.

## Background

**A.    Plaintiff's factual allegations**[2]

      From May 2019 to the present, Noli was an inmate at Nevada's High Desert State Prison (HDSP).  Noli alleges that since he entered HDSP, he had been trying unsuccessfully to get

---

[1] ECF No. 1.

[2] These facts are merely a summary of the plaintiff's allegations, they are not intended as findings of fact.

1   medical staff to surgically repair his umbilical hernia, which causes him pain and discomfort.

2   When Noli first saw a provider who would address his condition—three months after he entered

3   the facility—the provider issued orders that the hernia should be further examined with an

4   ultrasound device and repaired.  But neither happened, and when Noli submitted a kite asking for

5   a status report two months later, he was told that the Utilization Review Committee (URC) had

6   denied the requests with instructions to monitor Noli's condition.[3]

7       Noli was told that if his condition got worse he should submit a medical kite to schedule

8   an appointment with a medical provider.  Sometime later, Noli filed a kite to see a medical

9   provider about his hernia, which had "doubled in size" and was causing him "a tremendous

10  amount of pain."  Noli saw Dr. Bryan, who ordered the hernia to be examined by the prison's

11  general surgeon.  In September 2019, Noli sent a medical kite asking about the status of his

12  appointment with the general surgeon.  He was told that the URC denied the request for a referral

13  to the general surgeon with an order to continue monitoring the hernia.[4]

14      Noli was again told to file a kite if his condition got worse.  Noli submitted a kite and was

15  next seen by Dr. Manalang, who determined that the hernia should be surgically repaired and

16  submitted a request to the URC for Noli to have a consult with the prison's general surgeon.

17  Apparently the URC approved this request, because Noli saw the general surgeon in December

18  2019.  The surgeon informed Noli that he would be scheduled for surgery.[5]

19      A nurse told Noli that some doctor saw his E.K.G. results and wanted him to see a

20  cardiologist but nothing came of it and Noli got neither surgery nor an examination by a

21

22  _____

    [3] ECF No. 1-1 at 7.

23  [4] *Id.* at 8.

    [5] *Id.* at 9.

2

1  cardiologist.  So in October 2020, Noli sent another kite asking for a status update about his

2  cardiology appointment.  He was told that the URC denied the request that he be referred to see a

3  cardiologist.[6]

4          Another three months went by and Noli had an appointment with Dr. Martin who

5  examined the hernia, told Noli that the surgery was approved and he would check to see why

6  scheduling it was taking so long.  Noli had a blood draw in May or June 2020 and another

7  E.K.G. examination three weeks later.[7]  Noli's complaint stops with the seemingly cliff-hanger

8  that he asked Nurse Jamie the next day about the status of his surgery.[8]  However, it can be

9  reasonably inferred from Noli's allegations that he's suffered for over 22 months and was still

10  waiting for surgery when he initiated this action in April 2021.[9]

11  **B.  Plaintiff's cause of action**

12          Based on these events, Noli sues Calvin Johnson, Charles Daniels, Sonya Carrillo, Dr.

13  Martin, Dr. Bryan, Dr. Minev, Dr. Manalang, and Bob Faulkner and alleges a single claim for an

14  Eighth Amendment violation based on deliberate indifference to serious medical needs.  Noli

15  sues the defendants in their individual and official capacities,[10] and he seeks monetary

16  (compensatory and punitive), declaratory, and injunctive relief.[11]

17

18

19

---

20  [6] *Id.* at 10.

21  [7] *Id.* at 11.

    [8] ECF No. 1-1 at 11.  Noli does not name Nurse Jamie as a defendant.

22  [9] *See id* at 4.

23  [10] *Id.* at 2–4.

    [11] *Id.*at 49–50.

**Discussion**

**A.      Screening standard**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity.[12] In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief.[13]  All or part of the complaint may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis in law or fact.  This includes claims based on legal conclusions that are untenable, like claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist, as well as claims based on fanciful factual allegations or fantastic or delusional scenarios.[14]

Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief.[15]  In making this determination, the court takes all allegations of material fact as true and construes them in the light most favorable to the plaintiff.[16]  Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers,[17] but a plaintiff must provide more

---

[12] *See* 28 U.S.C. § 1915A(a).

[13] *See id.* at § 1915A(b)(1)(2).

[14] *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

[15] *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

[16] *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

[17] *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (recognizing that pro se pleadings must be liberally construed).

than mere labels and conclusions.[18]  "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations."[19]  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[20]

**B.    Deliberate indifference to serious medical needs**

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency."[21]  A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate.[22]  "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference."[23]  For the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain."[24]  For the second prong, he must show "(a) purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."[25]  This requires that the prison official "knows of and

---

[18] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[19] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[20] *Id.*

[21] *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted).

[22] *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

[23] *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014).

[24] *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted).

[25] *Id.*

disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[26]

When a prisoner claims deliberate indifference based on a delay in providing medical treatment, he must show that the delay led to further harm.[27]  Prison officials who know of a substantial risk to an inmate's health and safety are liable only if they responded unreasonably to the risk, even if the harm ultimately was not averted.[28]  Thus, if a prison medical official is denied resources necessary to provide medical care, that person cannot be said to have punished the inmate and cannot be held liable under the Eighth Amendment.[29]  Because deliberate indifference is required, a complaint that a medical provider inadvertently or negligently misdiagnosed or treated a medical condition is not sufficient to state a valid claim under the Eighth Amendment as "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."[30]  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs.[31]

A mere difference of opinion between medical professionals concerning the appropriate course of treatment, or a difference of opinion between the prisoner-patient and the medical-care

---

[26] *Farmer*, 511 U.S. at 837; *see also Peralta*, 744 F.3d at 1086.

[27] *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

[28] *Farmer*, 511 U.S. at 844.

[29] *Peralta*, 744 F.3d at 1084; *see also Patkins v. Tran,* No. 15-CV-05073-EMC, 2017 WL 2861914, at *7 (N.D. Cal. July 5, 2017) (holding that because prison policy concerning allowable dental services for prisoners did not include bridges, the law did not impose liability for damages on dentist for not providing a replacement bridge for inmate).

[30] *Estelle*, 429 U.S. at 106.

[31] *See Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

provider, also cannot support a claim for deliberate indifference to serious medical needs[32] unless the prisoner can "show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in <u>conscious</u> disregard of an excessive risk to [the prisoner's] health."[33]  If a defendant chooses to override medical recommendations and deny a person medical care solely based on an administrative policy that he knows would require an inmate to suffer medically (and not based on differences of medical opinions or because medical care was not medically indicated or would be unhelpful) there may be deliberate indifference.[34]  But advancing a policy that requires subordinates to commit constitutional violations cannot be sufficient for § 1983 liability if the policy does not proximately cause the plaintiff's constitutional harm.[35]  A plaintiff cannot plead a colorable claim on such a theory by merely offering the conclusory statement that there is a policy;[36] the plaintiff must plead facts that show that there is a policy, what the policy is, and what role each particular defendant played in creating that policy.[37]

Finally, because "[t]here is no respondeat superior liability under [§]1983,"[38] every target of a prisoner civil-rights claim must have personally participated in the constitutional

---

[32] *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981).

[33] *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (emphasis added).

[34] *Colwell v. Bannister*, 763 F.3d 1060, 1068 (9th Cir. 2014).

[35] *OSU Student All. v. Ray*, 699 F.3d 1053, 1076 (9th Cir. 2012).

[36] *Ashcroft*, 556 U.S. at 680–81.

[37] *Id.* at 678–81.

[38] *Id*. at 676 (holding that "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

deprivation.[39]  "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."[40]  "A showing that a supervisor acted, or failed to act, in a manner that was deliberately indifferent to an inmate's Eighth Amendment rights is sufficient to demonstrate the involvement—and the liability—of that supervisor."[41]  "Thus, when a supervisor is found liable based on deliberate indifference, the supervisor is being held liable for his or her own culpable action or inaction, not held vicariously liable for the culpable action or inaction of his or her subordinates."[42]  Therefore, "a plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates."[43]  There must be a sufficient causal connection between the supervisor's wrongful conduct and the Constitutional violation.[44]

## C.      Analyzing Claim 1

Noli has plausibly alleged that his surgery was delayed and that he was harmed as a result because he needlessly suffered "tremendous" pain waiting for surgery.[45]  Noli has also plausibly alleged that the URC's decisions against surgery were medically unacceptable under the circumstances.  According to Noli, the URC denied the first request even though the hernia had been "causing him a lot of pain" for at least several months.  And the URC denied the second

---

[39] *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

[40] *Id.*

[41] *Starr v. Baca*, 652 F.3d 1202, 1206–07 (9th Cir. 2011).

[42] *Id.* at 1207.

[43] *Id.*

[44] *Id.*

[45] ECF No. 1-1 at 8.

1 request even though Noli's hernia had "doubled in size" and was now causing him "a

2 tremendous amount of pain."[46]  But there's a fatal problem with Noli's complaint: he has not

3 plausibly alleged that any named defendant is responsible for delaying his surgery.

4       The only facts that Noli alleges about Johnson, Daniels, Carrillo, Dr. Minev, and

5 Faulkner are their titles.  I can infer from the alleged titles that those defendants are

6 administrators or supervisors,[47] and I can infer from the grievance records Noli attaches to his

7 complaint that some of them are also grievance responders.[48]  But these few facts and inferences

8 are not enough to state a plausible claim for deliberate indifference against any of them.  Simply

9 put, Noli doesn't allege that Johnson, Daniels, Carrillo, Dr. Minev, or Faulkner participated in or

10 directed any alleged misconduct on the part of medical staff or knew of unconstitutional acts by

11 medical staff and failed to act to prevent them.  As I explained above, "[a] supervisor is only

12 liable for constitutional violations of his subordinates if the supervisor participated in or directed

13 the violations, or knew of the violations and failed to act to prevent them."[49]  So Noli's

14 allegations against the administrative and supervisory defendants is deficient.

15       Noli's allegations about the other defendants aren't much more sufficient.  Dr. Bryan

16 inspected Noli's hernia and determined that a surgical examination was necessary, so Bryan

17 submitted a request for Noli to be examined by the prison's general surgeon.  But the URC

---

20 [46] *Id.*

21 [47] *See, e.g.*, *id.* at 2 (Sonya Carrillo is alleged to be the director of nursing at HDSP).

22 [48] *See, e.g.*, *id.* at 20 (Dr. Minev's resolving second-level grievance, explaining that the URC approved surgery; an appointment has been made and should be completed soon), 39 (Faulkner denying first-level grievance, explaining that Noli saw a surgeon on 12/20/19 who recommended

23 surgery and that the URC's review of the request for surgery is pending).

[49] *Taylor v. List*, 880 F.2d at 1045.

1  denied that request with instructions to continue monitoring the hernia.[50]  Dr. Manalong

2  examined the hernia, determined that surgery was necessary, and submitted a request for the

3  prison's surgeon to examine Noli.  Apparently that request was approved by the URC because

4  Noli alleges that he was soon examined by the prison's surgeon, who also determined that

5  surgery was necessary.[51]  Later, Dr. Martin inspected the hernia and told Noli that the URC had

6  approved the request for surgery and that he'd check on why it was taking so long.[52]  Nothing

7  more is alleged about these defendants, and what is alleged doesn't plausibly show that either

8  doctor committed a purposeful act or failed to respond to Noli's pain or possible medical need.

9  What this means is that while Noli alleges that these doctors took some action about his medical

10  needs, he does not allege that any of them acted in a manner that's deliberately indifferent to

11  those needs.

12      The upshot of my screening Noli's complaint is that he has not plausibly alleged that any

13  named defendant is responsible for delaying surgery to correct his hernia condition.  Claim 1 is

14  therefore dismissed without prejudice but with leave to amend.  And all of the defendants are

15  dismissed from the complaint without prejudice.  But because it does not yet appear that Noli

16  cannot state any set of facts upon which relief can be granted, I grant him leave to amend if he

17  can plead true facts to cure the deficiencies identified in this order.

18  **D.    Leave to amend**

19      To be clear, I do not grant Noli leave to amend in any way that he sees fit.  Noli has

20  limited leave to amend by alleging additional true facts to show that one or more of the named

21

22  _____
[50] ECF No. 1-1 at 8.

23  [51] *Id.* at 9.

[52] *Id.* at 11.

10

defendants is responsible for delaying his hernia surgery.  I also grant Noli leave to amend by adding parties to Claim 1, like anyone who served as a member of the URC when it declined his medical providers' requests for surgery.  Noli is cautioned that the use of Doe defendants is not favored in the Ninth Circuit.[53]  So if Noli chooses to pursue a claim against any member of the URC, he should attempt to determine the member's identity to properly name him or her as a defendant in this action.  I do not give Noli leave to assert new claims.

If Noli chooses to file an amended complaint, he is advised that an amended complaint replaces the original complaint, so the amended complaint must be complete in itself.[54]  This means that the amended complaint must contain all facts and claims and identify all defendants that he intends to sue.  He must file the amended complaint on this court's approved prisoner-civil-rights form, and it must be entitled "First Amended Complaint."  Noli must follow the instructions on the form.  He need not and should not allege very many facts in the "nature of the case" section of the form.  Rather, in each count, he should allege <u>facts</u> sufficient to show what <u>each</u> defendant did to violate his civil rights.  **He must file the amended complaint by November 25, 2021.**

### Conclusion

IT IS THEREFORE ORDERED that the Clerk of the Court is directed to **FILE** the complaint (ECF No. 1-1), which is **DISMISSED** in its entirety without prejudice and with **leave to amend by November 25, 2021.**

---

[53] *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

[54] *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (holding that for claims dismissed with prejudice, a plaintiff is not required to reallege such claims in a subsequent amended complaint to preserve them for appeal).

11

IT IS FURTHER ORDERED that **the Clerk of the Court is directed to SEND** plaintiff the approved form for filing a § 1983 prisoner complaint, instructions for the same, and a copy of his original complaint (ECF No. 1-1).  If plaintiff chooses to file an amended complaint, he must use the approved form and he must write the words "First Amended" above the words "Civil Rights Complaint" in the caption.  The amended complaint will be screened in a separate screening order, and **the screening process will take <u>many months</u>.  If plaintiff does not file an amended complaint by November 25, 2021, this action will be dismissed without prejudice for failure to state a claim, and this case will be closed without further prior notice.**[55]

_____

U.S. District Judge Jennifer A. Dorsey
Dated: October 22, 2021

---

[55] A decision on the application to proceed *in forma pauperis* (ECF No. 1) is deferred.

12